## STATE OF CONNECTICUT *v.* MICHAEL ANTHONY EDWARDS
## (SC 15585)

Callahan, C. J., and Borden, Norcott, Palmer and McDonald, Js.

Argued September 24—officially released December 22, 1998

*James Moreno*, special public defender, for the appellant (defendant).

*Lisa Herskowitz*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kevin Murphy*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. A jury convicted the defendant, Michael Anthony Edwards, of murder in violation of

General Statutes § 53a-54a,[1] and acquitted him of criminal possession of a firearm in violation of General Statutes § 53a-217[2] and criminal possession of a pistol in violation of General Statutes § 53a-217c.[3] The defendant appeals to this court pursuant to General Statutes § 51-199 (b) (3).[4] The defendant claims that: (1) the evidence was insufficient to prove beyond a reasonable doubt that he had intended to cause the death of the victim, George Wright; (2) the trial court improperly denied his motion for a new trial, in which he claimed that the evidence presented at trial supported a conviction of a lesser included offense; (3) the trial court improperly instructed the jury on intent to kill by failing to reiterate in a supplemental instruction that "intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent"; and (4) the trial court improperly instructed the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the evening of February 18, 1995, the

---

[1] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . by force, duress or deception . . . ."

[2] General Statutes § 53a-217 provides in relevant part: "Criminal possession of a firearm or electronic defense weapon . . . . (a) A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony [or] a class A felony, except a conviction under section 53a-196a . . . ."

[3] General Statutes § 53a-217c provides in relevant part: "Criminal possession of a pistol or revolver . . . . (a) A person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony . . . ."

[4] General Statutes (Rev. to 1997) § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ." Although not relevant to this appeal, § 51-199 (b) recently was amended by Public Acts 1997, No. 97-178, § 2.

defendant, after closing the family grocery store in which he had been working, approached the victim on Albany Avenue in Hartford. The two men, who were not friendly, exchanged angry words, and the defendant grabbed the victim's clothing and held a gun to his head. The defendant then shoved the victim backwards along the sidewalk in front of the store. The victim did not resist, but said "no, no, no." The defendant then pushed the victim's head down and shot him in the head. The victim fell to the sidewalk. The bullet entered the left side of the back of the victim's head, behind the left ear, traveled through the base and right side of the brain and lodged near his right eye. The victim died the following day of injuries sustained as a result of the gunshot wound.

I

The defendant first claims that the evidence was insufficient to establish that he had the specific intent, required for a murder conviction, to cause the victim's death. The defendant argues that because the jury acquitted him of the two weapon possession charges, it must have found that he did not possess or arrive at the scene with a weapon on the night of the shooting. The defendant presented evidence that the victim had been armed with a gun and that, in a struggle, the defendant had gained possession of the gun and accidentally shot the victim with it. The defendant argues that because he did not possess or arrive at the scene with a weapon, he could not have had the specific intent to cause the victim's death. We conclude that there was sufficient evidence for the jury to have found beyond a reasonable doubt that the defendant had the specific intent to cause the victim's death.

"We apply a two part test in analyzing a sufficiency of the evidence claim. First, we construe the evidence in the light most favorable to sustaining the verdict.

Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield*, [228 Conn. 62, 76, 634 A.2d 879 (1993)]. . . . *State* v. *Mejia*, 233 Conn. 215, 223, 658 A.2d 571 (1995)." (Internal quotation marks omitted.) *State* v. *Gould*, 241 Conn. 1, 6, 695 A.2d 1022 (1997). While the jury must find every element proven beyond a reasonable doubt to find the defendant guilty of the charged offense, direct evidence of intent is not required. See, e.g., *State* v. *Blackman*, 246 Conn. 547, 559, 716 A.2d 101 (1998). If it is reasonable and logical for the jury to conclude from the circumstances that the defendant had an intent to cause death, the jury may determine that the cumulative effect of all the evidence proves the defendant guilty of that element of the murder charge beyond a reasonable doubt. See id. "The intent of the actor is a question for the trier of fact, and the conclusion of the trier in this regard should stand unless it is an unreasonable one." *State* v. *Avcollie*, 178 Conn. 450, 466, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).

We disagree with the defendant that a lack of specific intent to cause death must follow a jury finding that the defendant did not possess or arrive at the scene with a weapon. There was ample evidence, which the jury could have credited, unrelated to the possession of any weapon, that the defendant had the specific intent necessary for a murder conviction. Specifically, there was eyewitness testimony that the defendant and the victim were arguing prior to the shooting, and that the defendant shot the victim in the head at close range. "We have stated that [o]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such

a circumstance a proper inference may be drawn in some cases that there was an intent to kill. . . . *State* v. *Holley*, 174 Conn. 22, 26, 381 A.2d 539 (1977). . . . *State* v. *Stanley*, 223 Conn. 674, 680, 613 A.2d 788 (1992)." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 259, 681 A.2d 922 (1996). In this case, the acquittals on both weapon possession charges do not preclude a finding that the defendant intended to cause the victim's death.

The defendant also claims that the testimony of certain of the state's witnesses was biased, varied greatly and contained many contradictions. The defendant claims that all but one of the state's witnesses were related to the victim. The state counters that, of the five eyewitnesses to the shooting, only two, a sister and an aunt, were members of the victim's family. Because of these circumstances, the defendant argues that "the existence of evidence establishing beyond a reasonable doubt that [the defendant] possessed the specific intent to kill [the victim] is virtually nonexistent."

As to any conflicting testimony provided by the state's witnesses, we follow the well established rule that we "must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . *State* v. *Mejia*, supra, [233 Conn.] 224. . . . *State* v. *James*, 237 Conn. 390, 435–36, 678 A.2d 1338 (1996)." (Internal quotation marks omitted.) *State* v. *Gould*, supra, 241 Conn. 6–7. When conflicting testimony is presented, the jury may credit the testimony it finds believable. See *State* v. *Person*, 236 Conn. 342, 347, 673 A.2d 463 (1996).

We conclude that, from the evidence presented, the jury reasonably could have found that the defendant possessed the specific intent to cause the victim's death.

## II

The defendant next claims that the trial court abused its discretion in denying his postverdict motion for a new trial. In this motion, he argued for the first time that the evidence at trial supported only a conviction for some lesser included offense of murder. The defendant never identified such lesser included offenses. At trial, the defendant did not request instructions on any lesser included offenses. Rather, he pursued a trial strategy of "all or nothing" by refusing such instructions in order to force the jury to choose between an acquittal and a murder conviction.[5] The defendant does not now claim that the trial court improperly failed to instruct the jury on lesser included offenses. Rather, the defendant seeks a new trial on lesser included offenses pursuant to Practice Book § 42-51, formerly Practice Book § 899.

Practice Book § 42-51 provides: "If the jury return a verdict of guilty, the judicial authority, upon motion of the defendant or upon its own motion, shall order the entry of a judgment of acquittal as to any offense specified in the verdict, or any lesser included offense, for which the evidence does not reasonably permit a finding of guilty beyond a reasonable doubt. If the judicial authority directs an acquittal for the offense specified in the verdict, but not for a lesser included offense, it may either: (1) [m]odify the verdict accordingly; or (2) [g]rant the defendant a new trial as to the lesser included offense." The defendant argues that a new trial on lesser included offenses is appropriate because

---

[5] The trial court summarized "a discussion with the defense and the state concerning any requested lesser included offenses. . . . [N]either side wishes the court to instruct on any lesser included offenses of murder." After the state accepted the trial court's summary, defense counsel stated: "That is a fair statement from the defense point of view, also."

"It may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict." *Fair* v. *Warden*, 211 Conn. 398, 404, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989).

the evidence was insufficient to prove the specific intent necessary to convict the defendant of murder. We disagree.

Section 42-51 is derived from rule 551 (b) of the Uniform Rules of Criminal Procedure.[6] 4 L. Orland & D. Borden, Connecticut Practice Book Annotated: Superior Court Criminal Rules (2d Ed. 1996) § 899, p. 512, historical note. The last sentence of rule 551 (b) is derived from subdivision (6) of § 1181 of the California Penal Code. See Unif. R. Crim. P. 551 (b), 10 U.L.A. 291–92 comment (1974). Section 1181 of the California Penal Code provides in relevant part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases . . . . 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed . . . ." Cal. Penal Code § 1181 (6) (Deering 1993). With reference to § 1181 (6), the California Supreme Court has explained that an appellate court may not "reduce the degree of the crime unless the evidence is legally insufficient to support the higher degree of which defendant was convicted . . . ." *People* v. *Daugherty*, 40 Cal. 2d 876, 884,

---

[6] Rule 551 (b) of the Uniform Rules of Criminal Procedure provides: "Upon verdict of guilty. If the jury returns a verdict of guilty, the court, upon motion of the defendant or its own motion, shall order the entry of a judgment of acquittal as to any offense specified in the verdict, or lesser included offense, for which the evidence does not or would not reasonably permit a finding of guilty beyond a reasonable doubt. If the court directs an acquittal for the offense specified in the verdict, but not for a lesser included offense, it may either:

"(1) Modify the verdict accordingly, or

"(2) Grant the defendant a new trial as to the lesser included offense." Unif. R. Crim. P. 551 (b), 10 U.L.A. 291 (1974).

256 P.2d 911, cert. denied, 346 U.S. 827, 74 S. Ct. 47, 98 L. Ed. 352 (1953), citing *People* v. *Daniel*, 65 Cal. App. 2d 622, 151 P.2d 295 (1944). The court further stated that "an appellate court cannot reduce the degree [of the crime] if there is substantial evidence to support the finding of a higher degree." *People* v. *Daugherty*, supra, 886; see also *People* v. *Lamothe*, 222 Cal. App. 2d 314, 321, 35 Cal. Rptr. 122 (1963).

## A

We conclude that a new trial on a lesser included offense should be ordered by this court under Practice Book § 42-51 only if this court finds that "the evidence [did] not reasonably permit a finding of guilty beyond a reasonable doubt" as to the greater offense. Practice Book § 42-51. As we stated in part I of this opinion, the jury reasonably could have found, based on the evidence at trial, that the defendant had the specific intent necessary for a murder conviction. The defendant has not demonstrated that the evidence supporting the murder conviction was insufficient as a matter of law.

## B

"Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." *State* v. *Hammond*, 221 Conn. 264, 269, 604 A.2d 793 (1992). We review the trial court's denial of the postverdict motion for a new trial to determine if the court abused its discretion. See id., 270.

In determining whether to overturn the jury's verdict and grant a new trial, the trial court properly determined that "the jury could reasonably have concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt";

*State* v. *Avcollie*, supra, 178 Conn. 458; and properly gave the evidence "a construction which [was] most favorable to the sustaining of the jury's verdict." Id., 461.

We conclude that the trial court did not abuse its discretion in denying the defendant's motion for a new trial.

### III

The defendant next claims that the trial court improperly instructed the jury in response to the jury's question regarding the definition of specific intent. Although the defendant did not raise this claim in the trial court, he contends that he may prevail on it under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). In *Golding*, we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. We agree that the record is adequate for review and that the defendant raises a constitutional claim. "[A]n improper instruction on an element of an offense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998).

We, therefore, consider the third prong of *Golding*. The defendant asserts that the trial court, in response to the jury's question, omitted key portions of its earlier charge. The question, as characterized by the court, was: "[D]oes intent to kill as defined require defendant's sound mind or consciousness, i.e., fit of rage, survival,

instinct, et cetera?"[7] In its initial charge on intent, but not in its response to the jury's question, the court had explained that "[i]ntentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent." The state counters that it is not reasonably possible that the court's supplemental instruction misled the jury into believing that it could convict the defendant of murder if it believed the shooting was accidental. We agree with the state.

"Our analysis begins with a well established standard of review. When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues

[7] The trial court responded to the jury's question as follows: "You are the triers of the fact. It is for you to determine, solely determine, what the defendant's state of mind was at the time that he is alleged to have committed this crime. However, I have instructed you legally that there is a specific legal standard in a crime of murder as to that state of mind meaning intent and I have defined intent for you. And you must take the legal definition that I have given to you to determine whether or not the state has met one of the essential elements of the crime of murder. And that is that the defendant acted with intent as I have explained that to you. So I will remind you that the legal definition that you must apply is as follows: *A person acts intentionally with respect to a result when his conscious objective is to cause such a result. It is your responsibility to determine factually what the defendant's state of mind was.* Whether or not you determine, based upon all of the evidence, whether or not the defendant acted with the necessary legal state of mind intentionally as I have just defined that term for you with respect to the essential elements of the crime of murder. I hope that helps you. If it doesn't and if we can be more helpful in some way, send out another note. If it answers your question, then I will ask that you continue to deliberate." (Emphasis added.)

and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995).

Upon examining the entire jury charge, we conclude that the trial court properly instructed the jury on specific intent. Twice in its initial charge, the trial court told the jury that conduct could not be intentional if it was accidental or inadvertent.[8] The trial court did not contradict its earlier instructions in the supplemental charge. Furthermore, the jury's question concerned the defendant's mental or emotional state, not the issue of accident or inadvertence. We conclude that the defendant has demonstrated neither that an alleged constitutional violation clearly exists nor that he was deprived of a fair trial. Therefore, the defendant has failed to satisfy the third prong of *Golding*.

## IV

The defendant finally claims that the trial court improperly instructed the jury on reasonable doubt. Notwithstanding our precedent to the contrary, the defendant contends that the following instruction deprived him of his state and federal constitutional rights to due process and to a fair trial before an impartial jury: "A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts. Nor is it a doubt suggested by the ingenuity of counsel or any of the jurors which is not justified by the evidence or lack of evidence." The defendant did not raise this claim at trial and seeks to prevail under *Golding*. This claim is without merit.

This claim is controlled by *State* v. *Taylor*, 239 Conn. 481, 503–505, 687 A.2d 489 (1996), cert. denied, 521 U.S.

---

[8] The two relevant portions of the charge were: (1) "Intentional conduct is purposeful conduct rather than conduct that is accidental or inadvertent"; and (2) "A killing cannot be intentional if it was the result of an accident."

1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). In *Taylor*, we effectively addressed the claim made here. The defendant in *Taylor* alleged that precisely the same charge violated his state and federal constitutional rights to due process of law. Id., 504. We held that the defendant had not demonstrated "the existence of an error of constitutional dimension"; id., 505; and, thus, failed to meet the third prong of the *Golding* test. As we stated in *Golding*, "[t]he appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 240.

In *Taylor*, acting pursuant to our supervisory power,[9] we urged trial courts to avoid further use of the phrase "ingenuity of counsel" because, "taken in isolation [it] conceivably could misdirect the jury's attention . . . ." *State* v. *Taylor*, supra, 239 Conn. 504. We adhere to that admonition. The trial court in this case, however, cannot be faulted for failing to heed that warning as the court instructed the jury in May, 1996, while our decision in *Taylor* was not released until December, 1996.

The defendant has not offered any reason for reversing *Taylor* and, indeed, did not specifically address *Taylor* in his brief or at oral argument. Considering the trial court's instructions in their entirety, we conclude that the trial court's instruction on reasonable doubt did not deprive the defendant of his constitutional rights to due process and a fair trial.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[9] "As an appellate court, we possess an inherent supervisory authority over the administration of justice." *State* v. *Patterson*, 230 Conn. 385, 397, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996).