STATE OF CONNECTICUT *v.* JOSE DELVALLE
(SC 15863)

Borden, Norcott, Palmer, McDonald and Peters, Js.

Argued March 24—officially released August 24, 1999

*Theresa M. Dalton*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, *John F. Blawie*, assistant state's attorney, and *Timothy J. Sugrue*, executive assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. After a jury trial, the defendant, Jose Delvalle, was convicted of murder in violation of General Statutes § 53a-54a (a)[1] and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a)

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

and 53a-48.[2] The trial court rendered judgment in accordance with the jury verdict,[3] and the defendant appealed to this court.[4] On appeal, the defendant claims that the trial court improperly instructed the jury on the presumption of innocence and reasonable doubt in violation of his rights under the sixth[5] and fourteenth[6] amendments to the United States constitution. We reject the defendant's claims and, accordingly, affirm the judgment of the trial court.[7]

The jury reasonably could have found the following facts. In January, 1996, the defendant and two other men known as "Peanut" and "Cano" were engaged in

[2] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

[3] The trial court sentenced the defendant to a total effective sentence of forty years imprisonment.

[4] The defendant appealed pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to have the assistance of counsel for his defense." These sixth amendment guarantees are made applicable to the states through the fourteenth amendment due process clause. *Duncan* v. *Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) (right to jury trial); *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (right to counsel).

[6] The fourteenth amendment to the United States constitution provides in relevant part: "No state shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[7] The defendant also contends that the trial court's jury instructions violated his rights under the analogous provisions of the Connecticut constitution. Because the defendant has provided no independent analysis of his state constitutional claims, we limit our review to the defendant's claims under the federal constitution. E.g., *State* v. *Beltran*, 246 Conn. 268, 277 n.7, 717 A.2d 168 (1998).

the sale of illegal drugs near the Greene Homes housing project in Bridgeport. The victim, Alrick Mitchell, recently had begun to sell drugs in the same area, which the defendant and his cohorts considered their territory.

On the afternoon of January 3, 1996, the victim and two friends, Luzanne Rosado and Juan Vasquez, were standing in front of Rosado's home, which bordered the Greene Homes housing complex. Three men wearing black hoods and sunglasses, subsequently identified as the defendant, Peanut and Cano, approached the victim. The defendant told the victim to move away from Rosado's property, and pulled out what appeared to be a TAC 9 assault weapon from under his coat to show the victim. The defendant then asked the victim if he had been selling drugs in the neighborhood. The victim replied that he had not. The victim then tried to retreat into Rosado's home, but Rosado, who indicated that she did not want any trouble, prevented him from doing so. The defendant then told the victim "you got to give me respect."

The defendant and his two companions pressured the victim into accompanying them as they left Rosado's yard. The victim walked a short distance with the three men, but then turned and ran. All three men fired their weapons at the fleeing victim. Two bullets struck the victim in the back of his head and neck, killing him. Eleven spent cartridge casings and one spent bullet were found on the ground in the area where the victim had been shot.

On appeal, the defendant contends, first, that the trial court, during its instructions on the presumption of innocence and reasonable doubt, improperly charged the jury that the principle requiring the state to establish guilt beyond a reasonable doubt is a "rule of law . . . made to protect the innocent and not the guilty." The

defendant claims that this charge impermissibly undermined the presumption of innocence and diluted the state's burden of proof in violation of the defendant's constitutional rights to due process and to a jury trial. The defendant's second claim is that the trial court, in instructing the jury on reasonable doubt, violated his rights to counsel and due process by informing the jury that reasonable doubt is not "a doubt suggested by the ingenuity of counsel . . . ."[8]

In reviewing claims of improper jury instructions, we are guided by well established principles. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 171, 728

---

[8] Because the defendant failed to object to either of these two instructions at trial, he seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in which we stated that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. The record is adequate for our review of the defendant's claims and, consequently, we address the merits of those claims. As we conclude hereafter, however, the defendant cannot prevail because his claims are not of constitutional magnitude as required by the second prong of *Golding*.

A.2d 466 (1999); accord *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

With respect to the defendant's first claim of instructional error, we recently considered, and rejected, a claim that it was constitutionally improper for the trial court to have instructed the jury that the requirement of proof beyond a reasonable doubt is a "rule of law . . . made to protect the innocent and not the guilty . . . ." *State* v. *Schiappa*, supra, 248 Conn. 168. In *Schiappa*, we addressed a challenge to instructional language virtually identical to that used by the trial court in this case. See id., 170–71. In this case, the trial court instructed the jury: "Now . . . the state does not desire the conviction of an innocent person or any person whose guilt upon the evidence is in the realm of reasonable doubt. The state has as much concern in having an innocent person acquitted as in having a guilty person punished. But for the safety and well-being of all persons of the state, for the protection of life and property, the state, of course, is concerned in securing the conviction of persons who have been proven by the evidence to have been guilty of committing . . . the crime or crimes charged beyond a reasonable doubt.

"It is the sworn duty of the court and the jurors to safeguard the rights of persons charged with crimes by respecting the presumption of innocence which the law imputes to every person so charged by making the state meet its burden of proof of guilt beyond a reasonable doubt. *But you must keep in mind that this rule of law is made to protect the innocent and not the guilty.* If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime or crimes charged, then it is the sworn duty of the jury to enforce the law and to render such verdicts." (Emphasis added.)

In rejecting the defendant's claim in *Schiappa*, we relied on the fact that, as in this case, the "challenged

portion of the instruction was immediately preceded by language underscoring the presumption of innocence and the state's burden of proof"; id., 172; and that "the allegedly improper language was immediately followed by an instruction that again emphasizes these two critical constitutional principles . . . ." Id. We also observed in *Schiappa* that the trial court, both in its preliminary instructions prior to trial and in its final instructions to the jury at the conclusion of the trial, had "repeatedly apprised the jury [in clear and legally correct terms] regarding the presumption of innocence and the state's burden of establishing guilt beyond a reasonable doubt." Id. As in *Schiappa*, the trial court in this case repeatedly and accurately explained those principles in its preliminary and final instructions to the jury. This case, therefore, is indistinguishable from *Schiappa*.[9]

The defendant has provided no persuasive reason why we should reconsider our determination of this issue in *Schiappa*. Accordingly, we conclude, as we did in *Schiappa*, that "the trial court's charge, when viewed in its entirety, adequately apprised the jury that the defendant was entitled to a presumption of innocence unless and until the state proved [him] guilty beyond a reasonable doubt." Id., 173. In the absence of any reasonable likelihood of juror confusion regarding the state's burden and the quantum of proof required for

[9] The defendant asserts that this case differs from *Schiappa* because the challenged portion of the court's instruction was particularly harmful to his case due to the fact that his defense was based largely on the presumption of innocence and the reasonable doubt standard. In support of this contention, the defendant points to his counsel's contention, during closing argument, that the state had not met its burden of proof beyond a reasonable doubt. We are not persuaded by the defendant's attempt to distinguish *Schiappa*. Because the reasonable doubt standard is applicable to all criminal prosecutions, every defendant is equally entitled to rely on it. The extent to which counsel emphasizes that principle in closing argument is irrelevant to the ultimate determination of whether the jury charge, taken as a whole, satisfies constitutional requirements.

a conviction, the defendant's constitutional claim must fail.[10] See id., 176–77.

Second, the defendant claims that the trial court improperly instructed the jury that reasonable doubt is not "a doubt suggested by the ingenuity of counsel,"[11] and that that language violated his right to counsel

[10] Although, in *Schiappa*, we rejected the defendant's constitutional claim, we also acknowledged that "[b]ecause the guilty as well as the innocent are entitled to the protections afforded by the presumption of innocence and the reasonable doubt standard, the challenged portion of the charge, when viewed in isolation, gives rise to a danger of juror misunderstanding." *State* v. *Schiappa*, supra, 248 Conn. 175. We, therefore, exercised our supervisory authority over the administration of justice to direct our trial courts to refrain from using such language in future cases. Of course, the trial of this case was concluded prior to the issuance of our opinion in *Schiappa*.

The state, in defending the trial court's charge, maintains that the language disapproved by this court in *Schiappa* serves the legitimate purpose of deterring jury nullification. This end may be served, however, by the use of other, more appropriate language; indeed, the trial court employed such language in the present case: "If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime or crimes charged, then it is the sworn duty of the jury to enforce the law and to render such verdicts." Because we agree with the state that it has a legitimate interest in deterring jury nullification, we expressly approve of, and strongly encourage, the use of this language. Of course, the trial court's charge also must include forceful language underscoring the importance of the presumption of innocence and the state's burden of establishing the defendant's guilt beyond a reasonable doubt.

[11] The trial court instructed the jury in relevant part as follows: "Now, in this case, as in all criminal prosecutions, the defendant is presumed to be innocent unless and until proven guilty beyond a reasonable doubt. This presumption of innocence was with this defendant when he . . . was first presented for trial on this case. It continues with him throughout the trial, unless and until such time as all [the] evidence produced here in the orderly conduct of the case considered in light of these instructions of the law and deliberated upon by you in the jury room satisfies you beyond a reasonable doubt that he is guilty.

"The burden to prove the defendant guilty of the crime of which he is charged is upon the state. The defendant does not have to prove his innocence. This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the particular crime charged.

"Now, whether the burden of proof resting upon the state is sustained depends not on the number of witnesses or on the quantity of the testimony,

and to a fair trial. We repeatedly "have upheld similar language on the ground that [it] did not, when properly considered in the broader context of the trial court's instructions in their entirety, [dilute] the state's burden of proof or otherwise misle[ad] the jury in any way." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997); cf. *State* v. *Edwards*, 247 Conn. 318, 329–30, 721 A.2d 519 (1998); *State* v. *Hines*, 243 Conn. 796, 817–20, 709 A.2d 522 (1998). We reach the same conclusion in this case. We see no reasonable possibility that the challenged language, when viewed in the context of the charge as a whole; see footnote 11 of this opinion; resulted in juror misunderstanding regarding the state's

but on the nature and quality of the testimony. Please bear in mind that one witness' testimony is sufficient to convict if it establishes all of the elements of the particular crime beyond a reasonable doubt. I will now explain to you the concept of reasonable doubt.

"It has no technical or unusual meaning. The meaning of reasonable doubt can be arrived at by emphasizing the word 'reasonable.' It is not a guess, a surmise or conjecture, *nor is it a doubt suggested by the ingenuity of counsel* or of a juror not warranted by the evidence. It is such a doubt as in serious affairs that concern you, you would pay heed, that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused or any other person who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion." (Emphasis added.)

burden of proving the defendant's guilt beyond a reasonable doubt. Furthermore, the court informed the jury that reasonable doubt is not a doubt suggested by the ingenuity of counsel or of a juror *"not warranted by the evidence."* (Emphasis added.) The phrase "not warranted by the evidence" qualifies the "ingenuity of counsel" language, and renders even more remote any possibility that the jury was misled by the latter phrase. See *State* v. *Hines,* supra, 819 n.18 ("[T]he phrase 'ingenuity of counsel' is immediately succeeded by the phrase 'or by a juror and unwarranted by the evidence.' Such language . . . indicate[s] to the jury that doubt may not be created by an argument of counsel or other jurors that is ingenious, but has no basis in the evidence. It is an accurate statement of the law to say that all findings of fact must be supported by the evidence.").[12] We, therefore, reject the defendant's claim that the jury charge was constitutionally infirm.

Although we consistently have rejected constitutional challenges to the "ingenuity of counsel" instruction, we also have urged trial courts to avoid its use in light of the fact that the phrase, "taken in isolation, conceivably could misdirect the jury's attention . . . ." *State* v. *Taylor,* supra, 239 Conn. 504; accord *State* v. *Edwards,* supra, 247 Conn. 330 (adhering to admonition in *Taylor* urging trial courts to avoid further use of phrase "ingenuity of counsel"); *State* v. *Hines,* supra, 243 Conn. 817 n.15 (same). To avoid any possibility of juror confusion arising from the use of the phrase, we

---

[12] In addition to his claim under *Golding*; see footnote 8 of this opinion; the defendant also seeks to prevail on his claim under the plain error doctrine. See Practice Book § 60-5. We reject the defendant's plain error claim in light of our conclusion that the trial court's instructions did not affect the fairness and integrity of the proceedings or result in manifest injustice to the defendant. See, e.g., *State* v. *Day,* 233 Conn. 813, 849, 661 A.2d 539 (1995) (plain error not implicated unless "the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted]).

invoke our supervisory authority over the administration of justice[13] to direct our trial courts to refrain from using the "ingenuity of counsel" language in the future.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers." (Internal quotation marks omitted.) *State* v. *Schiappa*, supra, 248 Conn. 175–76 n.47.