STATE OF CONNECTICUT *v.* MACK YOUNG
(AC 19343)

Landau, Mihalakos and Dupont, Js.

Argued October 18, 1999—officially released March 14, 2000

*Richard E. Condon, Jr.*, deputy assistant public defender, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Edward R. Narus*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Mack Young, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-

54a (a).[1] On appeal, the defendant claims that (1) the state failed to present sufficient evidence that he intended to kill the victim, (2) the trial court improperly denied his motion for a mistrial because a witness testified that the defendant was a gang member, (3) he was denied his constitutional right to a fair trial when a witness testified that the defendant was a drug dealer, (4) the court improperly included the "ingenuity of counsel" language in its instruction on reasonable doubt and (5) the court improperly admitted, as evidence of the defendant's consciousness of guilt, testimony related to flight. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 6, 1995, the defendant approached Ademola Adetunla on the street approximately one block from the home of the victim, Reginald Lee. The defendant asked Adetunla for money but Adetunla refused. Adetunla told the defendant that he was going to the victim's apartment to use the telephone. The defendant informed Adetunla that he was going to the apartment also, to collect a debt that he claimed the victim owed to him. Upon arriving at the home of the victim, the two men were let into the apartment by the victim's live-in girlfriend, Dorothy Hankerson.

The defendant made a telephone call to Bruce Rosemond who lived across the street from the victim. Rosemond owed the defendant $10, which he contended he had given to the victim and requested that it be given to the defendant. After leaving the apartment to speak with Rosemond, the defendant asked Rosemond if he would return with him to the victim's apartment to confront him. Upon entering the apartment, the defen-

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

dant proceeded to the bedroom where the victim was sleeping and began punching the victim in the chest while Rosemond asked what he had done with the money that had been given to him. The victim insisted that he did not know anything about the money and asked if he could call Rosemond's wife to confirm his story. After speaking to her briefly, the victim handed the telephone to the defendant, who listened for a moment and then hung up the telephone. The defendant continued to punch the victim, telling him that he wanted what was his. Rosemond began to walk out of the apartment and the defendant followed him, asking Rosemond for the $10 he was owed.

Upon leaving the apartment with the defendant, Rosemond noticed that the defendant had a knife. Before Rosemond left to return to his own home, the defendant told him that he was ready to kill for what was his. The defendant then rushed into the apartment and, upon encountering the victim in the hallway, continued to demand payment of the $10 and punched the victim repeatedly. When the victim tried to cover his face from the punches, the defendant stabbed him in the chest and walked back toward the apartment door. Neither of the two witnesses, Hankerson and Adetunla, noticed that the victim had been stabbed until he yelled from his bedroom for Hankerson to call 911. As the defendant approached Adetunla, who was in the living room, he exclaimed that he had stabbed the victim by accident. The victim later died from the single stab wound.

More than five months after the stabbing, the defendant was apprehended in Minnesota and returned to Connecticut where he was charged with murder. After conviction, this appeal followed. Additional facts will be discussed where relevant.

## I

The defendant contends in his first claim that the state failed to present sufficient evidence to prove beyond a reasonable doubt that he intended to kill the victim as required for a conviction of murder.[2] We disagree.

"In reviewing a sufficiency of the evidence claim, we must apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994)." (Internal quotation marks omitted.) *State* v. *Potts*, 55 Conn. App. 469, 471, 739 A.2d 1280, cert. denied, 252 Conn. 905, 743 A.2d 616 (1999).

"It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury." *State* v. *Brunori*, 22 Conn. App. 431, 434–35, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). "We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772

---

[2] The defendant concedes that the evidence presented in this case was sufficient to convict him of one of the lesser included offenses of murder. The trial court instructed the jury on the lesser included offenses of intentional manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), reckless indifference manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), and reckless manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).

(1984). "The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . *State* v. *Hart*, 198 Conn. 424, 427, 503 A.2d 588 (1986). [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . *State* v. *Scielzo*, 190 Conn. 191, 197, 460 A.2d 951 (1983)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995).

Our Supreme Court has held that the jury must find every element proven beyond a reasonable doubt to find the defendant guilty of the charged crime. *State* v. *Torres*, 242 Conn. 485, 489–90, 698 A.2d 898 (1997). "The specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. . . . Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Furthermore, [i]ntent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." (Internal quotation marks omitted.) *State* v. *Potts*, supra, 55 Conn. App. 472.

Immediately preceding the stabbing of the victim, the defendant was talking to Rosemond while holding a knife and stated that he was willing to kill for what was his. He expressed to both Rosemond and Adetunla that he was upset by the victim's failure to pay him the money he was owed. Prior to the stabbing, the defen-

dant repeatedly punched and slapped the victim while telling him that "something [was] going to happen" if he did not get his money. After stabbing the victim, the defendant did not seek medical attention for him and kicked Adetunla as he attempted to go to the victim's aid.[3]

The stabbing, according to the defendant, was an accident that occurred because the victim ran into the defendant's knife. The defendant claims in his brief that the victim's death "was the unfortunate result of the fortuitous track that the blade took." The defendant points to the testimony of Malka Shah, the associate medical examiner for the state of Connecticut, who performed the autopsy. Shah testified that the most resistance that the knife was likely to have encountered was when it penetrated the skin. The blade entered between the victim's ribs, missed any bone or cartilage and passed through soft tissue until it penetrated the heart. Shah also testified, however, that the knife was plunged so far into the victim's chest that the handle left an imprint on the victim's skin.

"[O]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn . . . that there was an intent to kill." (Internal quotation marks omitted.) *State* v. *McClam*, 44 Conn. App. 198, 207–208, 689 A.2d 475, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). We cannot say on the basis of the testimony presented in this case, viewed in the light most favorable to the prosecution, that the jury could not have found the element of intent proven beyond a reasonable doubt.

---

[3] "We have previously noted that 'the defendant's failure to summon medical assistance for [the] victim [is] part of the evidence from which the jury could have inferred an intent to kill.' *State* v. *Sivri*, [supra, 231 Conn. 129]." *State* v. *Tomasko*, 238 Conn. 253, 259, 681 A.2d 922 (1996).

The defendant presented his theory that the victim's death was an accident to the jury. We conclude that the cumulative effect of the evidence was more than sufficient to allow the jury to find beyond a reasonable doubt that the defendant intended to cause the victim's death.

## II

The defendant claims next that the trial court improperly denied his motion for a mistrial, which he based on a witness' testimony that the defendant was a gang member. More specifically, the defendant claims that Adetunla's unsubstantiated testimony that the defendant belonged to a gang caused irreparable and substantial prejudice. We disagree.

The following additional facts are relevant to the resolution of this claim. Adetunla was one of two witnesses who was present during the murder and testified on behalf of the prosecution at trial. Following the murder, however, Adetunla did not come forward voluntarily, and the state had been unable to locate him until shortly before trial. Defense counsel cross-examined Adetunla vigorously regarding his failure to come forward immediately, the pending criminal charges against him and the inconsistent statements he had made to the defendant's investigator.[4]

During the state's redirect examination of Adetunla, the following exchange took place:

"Q. Did you say that looking back you wished you hadn't talked to [the defendant's investigator] at all?

"A. Yes. I—yes.

---

[4] Defense counsel asked Adetunla about his alleged statement to the defendant's investigator that he did not know anything about the incident. Although Adetunla could not recall making such a statement, he did admit to being apprehensive about getting involved in the case.

"Q. Did you have concerns for your safety?

"A. Yes, I—

"Q. Even while incarcerated?

"A. Yes.

"Q. In talking to somebody associated with the defendant?

"A. Yes."

The defendant objected to the question as leading, and the trial court overruled the objection. The state's attorney then asked Adetunla how his concern about getting involved affected his conversation with the investigator. Adetunla answered, "I told [him], I say I don't want to get involved because I think [the defendant] is part of the gang, and I don't want to get involved to testify in court against him." The defendant moved to strike the answer as nonresponsive and the trial court denied the request.

Following Adetunla's testimony and outside the presence of the jury, the defendant moved for a mistrial based on the comment concerning his alleged gang affiliation. He argued that the testimony was both nonresponsive and highly prejudicial. The defendant indicated that, in the absence of a mistrial, he would be seeking a curative instruction from the trial court. The court denied the defendant's motion for a mistrial finding that Adetunla's testimony about alleged gang membership was one isolated comment that did not result in substantial and irreparable prejudice. The court did, however, instruct the jury in essentially the same manner requested by the defense that there was no evidence that the defendant was a member of a gang and that the jurors should disregard the witness' testimony on that subject.[5]

---

[5] The trial court stated: "There was some reference to gang membership in a response given by the last witness who testified. I believe that was during the redirect examination of that witness. Ladies and gentlemen, there

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 350, 696 A.2d 944 (1997). "The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *State* v. *Cruz*, 40 Conn. App. 515, 524, 672 A.2d 502, cert. denied, 237 Conn. 909, 675 A.2d 457 (1996).

The trial court did not abuse its discretion by denying the defendant's motion for a mistrial. The court found that the comment by Adetunla was isolated and made in response to a proper inquiry by the state as to why the witness was apprehensive. The court's remedy was appropriate in that a curative instruction was given immediately upon the jury's return, making it clear that there was no evidence of gang affiliation and that the

is no evidence whatsoever of gang affiliation or related activity in this case, and you are specifically instructed to completely disregard that reference, that remark, and, of course, it is to play absolutely no role in or have any bearing whatsoever on your decision in this case or your consideration of the evidence."

remark should not be considered in any way. We conclude that no injustice occurred, nor was there a manifest abuse of discretion by the trial court.

III

In his third claim, the defendant asserts that he was denied his constitutional right to a fair trial when Adetunla testified that the defendant was a drug dealer. We are not persuaded.

Prior to the testimony of Adetunla, the defendant requested that the court restrict the witness from referring to any alleged drug involvement of the defendant. The court instructed the witness to refrain from making any reference to drugs during his testimony and stated that if something were to "come up," the jury would be excused and the matter would be addressed outside the jury's presence. The witness testified on direct examination that the defendant told him that he had been "burned" by the victim. When asked by the state what he meant by "burned," Adetunla stated, "like if he gives [the victim] something, you know, drug or some things that he never get money back. That's what I know that he said. Burned, like mean that robbed or something like that. That I never get money back. If he give [the victim] some things, that he never get his money back." The defendant did not object to the question, nor did he seek to strike the response. Now, for the first time on appeal, the defendant alleges that he was denied a fair trial.

"Absent a timely objection, this claim is not reviewable. . . . Only the most exceptional circumstances will save a claim from the fatal consequences of a defendant's failure to make a timely objection. *State* v. *Reddick*, 197 Conn. 115, 125, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). The defendant has suggested no exceptional circumstances to warrant departure from the general

rule that limits appellate review of all issues to those on which the trial court has had an opportunity to rule. *Knight* v. *Bourbeau*, 194 Conn. 702, 704 n.3, 485 A.2d 919 (1984)." (Citations omitted.) *State* v. *Harvey*, 27 Conn. App. 171, 176–77, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992).

In *Harvey*, the defendant filed a motion in limine prior to trial seeking to preclude any testimony relating to an unidentified informant's telephone call to the police, which motion the trial court granted. A police officer, however, testified as to the contents of the telephone call in violation of the court's instructions. The defendant made no objection to the question or the response, and we held that the claim, as to that comment, was not properly preserved for appellate review. The defendant's claim in this case, similarly, was not properly preserved and we decline review.

## IV

In his fourth claim, the defendant asserts that the trial court improperly included the "ingenuity of counsel" language in its instruction on reasonable doubt. We disagree.

The defendant submitted a written request to charge, prior to final argument, in which he requested that the court instruct the jury that "[a] reasonable doubt is not a capricious or frivolous doubt, nor a doubt which is raised by the ingenuity of counsel or by a juror and unwarranted by the evidence . . . ." The trial court, during its instruction to the jury on reasonable doubt, instructed as follows: "[T]he meaning of reasonable doubt, ladies and gentlemen, can be arrived at by emphasizing the word 'reasonable.' It is not a doubt based on a surmise, a guess, or a mere conjecture, nor is it a doubt suggested by the ingenuity of counsel, or of a juror not warranted by the evidence."

The defendant did not object to the trial court's instruction. On appeal, however, the defendant claims that the instruction was improper and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] and the plain error doctrine. Practice Book § 60-5. The defendant claims that pursuant to the Supreme Court's decisions in *State* v. *Taylor*, 239 Conn. 481, 504, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997), and *State* v. *Edwards*, 247 Conn. 318, 329–30, 721 A.2d 519 (1998), the instruction given by the court was improper and, therefore, violated his rights to a jury trial, due process of law and counsel.

The defendant correctly points out that our Supreme Court, in *Taylor*, exercised its supervisory powers to urge trial courts to avoid further use of the "ingenuity of counsel" instruction. In *State* v. *Delvalle*, 250 Conn. 466, 473–76, 736 A.2d 125 (1999), however, the court, following the reasoning of *Taylor*, held that an instruction virtually identical to that given in this case "did not, when properly considered in the broader context of the trial court's instructions in their entirety, [dilute] the state's burden of proof or otherwise misle[ad] the jury in any way." (Internal quotation marks omitted.) Id., 474. Viewed in the context of the entire instruction, the instruction here did not clearly deprive the defendant of a fair trial.[7]

---

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] Additionally, because the charge was given pursuant to the defendant's request, the defendant can not now claim on appeal that the court improperly granted such request. *State* v. *Prioleau*, 235 Conn. 274, 294, 664 A.2d 743 (1995); *State* v. *Zollo*, 36 Conn. App. 718, 736, 654 A.2d 359, cert. denied,

## V

The defendant's final claim is that the trial court improperly instructed the jury on consciousness of guilt by concluding that the testimony of Maurice Allen was relevant to flight. We disagree.

The jury reasonably could have found the following facts, which are relevant to the resolution of this issue. At the time of the murder, Allen had been living in an apartment where the defendant had been staying for approximately one or two weeks. On the night of the murder, two police officers came to the apartment looking for the defendant in connection with a stabbing. At the time, Allen was the only person in the apartment, and he relayed that fact to the police officers, who then waited in an unmarked police car in front of the apartment. When the defendant arrived, he grabbed some of his things, was told by Allen that the police were looking for him and then, after noticing the unmarked police car in front of the apartment, left through a side door. The defendant was not apprehended until more than five months later in Minnesota.

"Flight, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Thomas*, 50 Conn. App. 369, 382–83, 717 A.2d 828, cert. granted on other grounds, 247 Conn. 935, 722 A.2d 1217

234 Conn. 906, 660 A.2d 859 (1995). To make such a claim on appeal "can at best be described as disingenuous." *State* v. *Prioleau*, supra, 294.

(1998). "Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight . . . is ordinarily the basis for a charge on the inference of consciousness of guilt." *State* v. *Williams*, 27 Conn. App. 654, 663, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992). "The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous." (Internal quotation marks omitted.) *State* v. *Groomes*, 232 Conn. 455, 472–73, 656 A.2d 646 (1995).

The trial court properly determined that Allen's testimony was relevant to a determination of flight. It was for the jury to consider the weight to be given to any ambiguities or explanations. The instruction regarding consciousness of guilt, therefore, was also proper.

The judgment is affirmed.

In this opinion the other judges concurred.