STATE OF CONNECTICUT *v.* PETER HYSLOP
(3627)

BORDEN, SPALLONE and BIELUCH, Js.

Argued February 5—decision released April 14, 1987

*Bruce A. Sturman,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing from a judgment of conviction, after a jury trial, of the crime of sexual assault in the first degree in violation of General Statutes § 53a-70. The defendant claims that the trial court erred in failing to suppress an out-of-court identification and in admitting evidence of the defendant's flight from the police.

In the early morning hours of September 12, 1983, the victim was walking along the embankment of interstate highway I-91 when she saw a black male walking on the median divider of the highway. The man then crossed the highway, walked towards the victim, and, upon approaching her, suddenly grabbed her, knocking her down the embankment. There, he punched her in the eye, choked her with his forearm and then proceeded to assault her sexually. This encounter lasted approximately twenty minutes. Subsequently, the victim identified the defendant as her assailant and, after a jury trial, he was convicted of the sexual assault.

In his first claim of error, the defendant contends that the trial court erred in refusing to suppress the victim's out-of-court identification because it was obtained as a result of impermissibly suggestive procedures and was unreliable based on the totality of the circumstances. We disagree.

From the evidence adduced at a hearing held on the defendant's motion to suppress the victim's identification testimony, the following facts could reasonably have been found. Although it was dark in the area of the assault, there was some lighting either from street lights or from a nearby apartment building. The victim was fully conscious at all times and was neither

drunk nor on medication. The victim was within one or two feet from the defendant for most of the twenty minute assault and was able to get a good look at his face. In her description to the police, she stated that her attacker was a black male, five feet seven inches in height, of average build and complexion, with black hair, a flared nose, and average lips, and wearing roundish wire sunglasses. She described him as wearing what appeared to be new, unfaded dark blue jeans along with a denim jacket with snap closures. Further, on the night of the assault, she assisted the police in formulating a composite picture of her assailant which later proved to be a remarkable likeness of the defendant.

Later, the victim viewed three photo arrays presented to her by the police. She was unable to identify anyone as her attacker in either of the first two arrays, one of which she viewed four days after the attack and the other five days later. The defendant's picture was not in either of these two arrays. One week later she recognized the defendant's photo during her viewing of the third array. She told the police that she was ''pretty sure this was him'' but she would have to see him in person to be sure.

In order to afford the victim an opportunity to view the suspect in person, the police, without informing her where she was going, took the victim to the parking lot located at the defendant's place of employment, where she observed several black males of the defendant's age coming and going. She identified the defendant as her attacker when she observed him exiting a van from about twenty-five to thirty feet away. As soon as she saw him, she turned pale and said she felt ill. Subsequently, during the trial, she stated that her out-of-court identification at the parking lot was based on her recollection of the assault incident rather than from her memory of the photo array. At the close of her

direct testimony, she made an unqualified in-court identification of the defendant as the person who sexually assaulted her. The trial court found that, although the out-of-court identification procedures were suggestive, they were not impermissibly suggestive.

A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. *State* v. *Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986). In determining whether an identification procedure violates a defendant's due process rights, the trial court must determine whether the identification procedures are unnecessarily suggestive and, if so, whether the identification was nevertheless reliable under the totality of the circumstances. *State* v. *Evans,* 200 Conn. 350, 354, 511 A.2d 1006 (1986). In order to prevail on appeal, the defendant must demonstrate that the trial court erred in its determination as to both the suggestiveness of the procedure and the reliability of the identification under the totality of the circumstances. *State* v. *Hinton,* 196 Conn. 289, 293, 493 A.2d 836 (1985). Whether a procedure is unnecessarily suggestive depends on the facts and circumstances of each case. *State* v. *Findlay,* 198 Conn. 328, 337–38, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

The defendant claims that the identification procedure at the parking lot was impermissibly suggestive because there was evidence that when the van from which the defendant emerged entered the parking lot, the police stopped talking, thus subtly directing her attention to the defendant. The evidence, however, was conflicting on this matter. One of the officers testified that there was no conversation when any of the vehicles arrived or left the parking lot. Furthermore, the victim also remembered no conversations while waiting in the parking lot. Where there is conflicting testi-

mony on a motion to suppress, the issue is one of credibility for the trier of fact to determine. *State* v. *Vass,* 191 Conn. 604, 610, 469 A.2d 767 (1983); *State* v. *McKnight,* 191 Conn. 564, 571–72, 469 A.2d 397 (1983). "The evidence will be construed in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous. Practice Book § 3060D [now § 4061] . . . ." (Citation omitted.) *State* v. *Vessichio,* 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). The trial court's conclusion that, although the procedures here were suggestive, they were not impermissibly so, is supported by the evidence and we cannot say that it is erroneous.

The defendant's second claim is that the trial court erred in admitting evidence of the defendant's flight from the police because there was no evidence that the defendant knew he was wanted by the police. This claim is both contrary to the facts and unsupported in law. There was direct and inferential evidence that the defendant knew he was wanted by the police. The day before the arrest, two plain clothes officers went to the defendant's home, identified themselves as police to the defendant's live-in girlfriend, and made inquiries as to the defendant's place of employment. The girlfriend informed the defendant that evening that the police had been there. Upon the approach of plain clothes officers the next day, the defendant fled out the back door of his home and broke into a run. The trier of fact could reasonably infer from these facts that at the time of his flight, the defendant was aware that he was wanted by the police. Furthermore, the state was not required as a matter of law to establish that the defendant had actual knowledge that he was being charged with a criminal offense before introducing evidence of his

flight. *State* v. *Nemeth,* 182 Conn. 403, 407–408, 438 A.2d 120 (1980). We therefore find no merit to this claim of error.

There is no error.

In this opinion the other judges concurred.