## STATE OF CONNECTICUT *v.* SHAWN HOLMES
### (AC 19329)

Mihalakos, Dranginis and Shea, Js.

Argued February 23—officially released June 26, 2001

*Richard E. Condon, Jr.*, special deputy assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Kevin Lawlor*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Shawn Holmes, appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) the trial court improperly admitted evidence of flight and instructed the jury on consciousness of guilt, and (2) prosecutorial misconduct deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 16, 1997, B,[1] a fourteen year old eighth grader, attended a Bible study class in Bridgeport with her two friends, K and S. The class ended around 9 p.m. After waiting some time for the person who was to pick them up, the three girls walked a few blocks to the home of K's uncle. No one was at the house, and the girls walked back toward the building where the Bible study class was held. During the walk back, the girls encountered three men who had exited a car to talk to them. B did not know any of the men, but S knew one of them. During the conversation, a fourth man came out of a nearby house. The men were later determined to be the defendant, his brother, Maurice

---

[1] To comply with General Statutes § 54-86e, the court will not use the names of the victim or her friends.

Holmes, and Milton Martinez and Jack Martinez, who were also brothers.

The men asked the girls if they wanted to go to a party, and the girls replied, "No." When asked by the men, the girls were dishonest about their ages. The men offered to give the girls a ride home, and Milton Martinez gave S his driver's license as a "guarantee" that he would drive them home. S and B got into the backseat of the car, but K refused to get into the car and started to walk back to her uncle's house. The four men, S and B drove to the Milford Motel. Milton Martinez, who was driving, parked and went into the office to rent a motel room. He returned with a key and drove to the door of room 106.

All six people exited the car and entered the motel room. S went to the bathroom with Maurice Holmes, and B sat on the bed closest to the bathroom. The other men in the room smoked marijuana and watched television. The defendant then went and sat next to B on the bed. He then got up and said, "Come on," indicating that he wanted B to take off her clothes. B said no. The defendant pulled down her pants and pushed her back onto the bed. One of the other men held B's legs while the defendant put on a condom and proceeded to penetrate B's vagina. After about five minutes, the defendant stopped, and Milton Martinez approached the bed. Jack Martinez and the defendant held B's legs and Milton Martinez pulled down his pants and, after putting on a condom, penetrated B's vagina. While Milton Martinez was penetrating B, Jack Martinez was touching her body and the defendant was trying to put his penis in her mouth. Jack Martinez also tried to have sex with her but did not.

After S and Maurice Holmes exited the bathroom, the group stayed in the motel room for fifteen or twenty minutes longer. S then returned Milton Martinez'

license, and the group left the motel. B and S were dropped off a few blocks from their homes, and the four men drove off. S and B began walking home, and S heard her mother calling and ran to meet her. B continued home where her cousin, uncle and brothers were waiting for her. K had told B's family that she had seen B and S get into a car with some men after Bible class. B's family asked where she had been, and B told them what had happened. B was then taken to a hospital.

Following his arrest, the defendant was charged in a three count information with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and (3), and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The court declared a mistrial on count one. On count two, the defendant was found guilty of the lesser included offense of sexual assault in the second degree. The defendant was found guilty as charged on the third count. The defendant received a total effective sentence of ten years, execution suspended after four and one-half years, and ten years probation. This appeal followed. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly admitted evidence of flight. Specifically, the defendant argues that the court improperly admitted evidence of police efforts to locate him as relevant to flight and improperly instructed the jury on consciousness of guilt. The defendant argues that the prejudicial effect of the evidence of flight outweighed its probative value.

The following additional facts are relevant to our review of this claim. Sergeant Philip Maloney of the Milford police department was the lead investigator in this case. According to Maloney, one of the other men alleged to have been in the motel room told him that

he could find the defendant at 231 Grove Street. Maloney went to the address, but received no answer. He left a card with his name, address, number and a note stating that he was conducting an investigation and wanted the defendant and his brother to contact him. After several days, he had not heard from the defendant or his brother, and he returned to 231 Grove Street and left his card again. He then sought a warrant for the defendant's arrest, which was issued. He again returned to 231 Grove Street after the warrant had been issued and left a card. He went several more times after the warrant had been issued. On July 4, 1997, Maloney spoke with Darlene Holmes, the mother of the defendant and Maurice Holmes. Maloney advised her that there were arrest warrants out for her sons. She told Maloney that she would inform her sons and have them contact him. They never contacted Maloney. Maloney made several more attempts to contact the defendant at 231 Grove Street.

On July 30, 1997, the arrest warrants for the defendant and Maurice Holmes were referred to the Connecticut fugitive task force. Agent Art Hamilton Jarvis was assigned to investigate and serve a warrant on the defendant. On September 10, 1997, Jarvis discovered that the defendant and his family had moved to 94 Denver Avenue. On September 19, 1997, the police arrested the defendant and Maurice Holmes after surveillance at the new address.

The defendant filed a motion in limine to require that the state's offer of evidence of other crimes or acts of misconduct occur outside the presence of the jury. At trial, the defendant stated that the motion applied to evidence of police attempts to locate him after April, 1997. In an offer of proof outside the presence of the jury, the state presented the testimony of Maloney and Jarvis concerning their efforts to locate the defendant. The defendant objected to the admission of the testi-

mony on four grounds. The court ruled that the state did not have to prove the defendant's knowledge of efforts to locate him prior to the issuance of the arrest warrant for that evidence to be relevant and thereby admissible. The court also concluded that the law did not require the state to present evidence that the defendant had actual knowledge that a warrant had been issued for his arrest to introduce evidence of flight.

A trial court may "entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding." Practice Book § 42-15. "This court has said that '[t]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial.' *Richmond* v. *Longo*, 27 Conn. App. 30, 36, 604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992)." *State* v. *Pharr*, 44 Conn. App. 561, 581, 691 A.2d 1081 (1997).

"Generally, '[t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993). Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion. *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994).' *State* v. *Gracia*, 51 Conn. App. 4, 15–16, 719 A.2d 1196 (1998)." *Olson* v. *Accessory Controls & Equipment Corp.*, 54 Conn. App. 506, 526, 735 A.2d 881 (1999), aff'd, 254 Conn. 145, 757 A.2d 14 (2000).

Our Supreme Court has stated: "Flight, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Holloway*, 209 Conn. 636, 651–52, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). " 'The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous.' *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986)." *State* v. *Freeney*, 228 Conn. 582, 594, 637 A.2d 1088 (1994).

"It is relevant to show the conduct of an accused, as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. *State* v. *Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984). . . . . The court must weigh the probative value against any prejudicial effect on the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986). "Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Perry*, 48 Conn. App. 193, 201, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

On appeal, the defendant argues that the state's offer failed to support an inference of flight because there

was no evidence showing that the defendant was aware that he was wanted by the police. The defendant argues that the court improperly based its ruling solely on *State v. Nemeth*, 182 Conn. 403, 438 A.2d 120 (1980), and *State v. Hyslop*, 10 Conn. App. 457, 523 A.2d 1350 (1987), and failed to consider the lack of immediacy between the incident and the police efforts to locate him. The defendant also argues that the failure to consider an absence of immediacy shows that the court did not undertake properly its responsibility of balancing the probative value of the evidence against its prejudicial effect. We disagree.

The defendant's criticism of the court's reliance on *Nemeth* is unfounded. *Nemeth* and *Hyslop* articulate the principle that the state is not required, as a matter of law, to establish that the defendant had actual knowledge that he was being charged with a criminal offense before introducing evidence of his flight. *State v. Nemeth*, supra, 182 Conn. 407–408; *State v. Hyslop*, supra, 10 Conn. App. 461–62. In this case, the state was not required to show that the defendant had knowledge that the police were actively looking for him for the evidence of flight to be introduced to the jury to infer consciousness of guilt. The court properly relied on *Nemeth* and *Hyslop* in allowing the state to present evidence of the defendant's flight even if the state failed to introduce direct or inferential evidence that the defendant knew that he was wanted by the police.

The record discloses many facts from which the jury reasonably could infer that the defendant was avoiding contact with the police. On the basis of our review of the transcripts and evidence, we cannot say that the court abused its discretion in determining that the evidence of flight should be admitted. In this case, it was not a manifest abuse of discretion to allow into evidence the efforts of police to locate the defendant.

The defendant further claims that the court's jury instruction concerning consciousness of guilt was improper because the prejudicial effect of the evidence outweighed its probative value. "Evidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight . . . is ordinarily the basis for a charge on the inference of consciousness of guilt." *State* v. *Williams*, 27 Conn. App. 654, 663, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992). "The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous." (Internal quotation marks omitted.) *State* v. *Groomes*, 232 Conn. 455, 472–73, 656 A.2d 646 (1995).

We cannot say that the court abused its discretion in determining that the evidence of flight was more probative than prejudicial or that it appears that an injustice has been done. The admitted evidence was sufficient to support the consciousness of guilt instruction. The court properly instructed the jury on the factors to consider in determining whether to infer a consciousness of guilt from the evidence before it. The court also properly explained that it was for the jury to determine the weight to be accorded to such evidence in making its determination. Having determined that the court properly admitted the evidence of flight, we further conclude that the court properly charged the jury concerning consciousness of guilt.[2] See *State* v.

[2] The court charged the jury concerning consciousness of guilt as follows: "Now, the attorneys, during final argument, made some references to a concept which we refer to as consciousness of guilt. The law recognizes a principle known as consciousness of guilt. . . . When a person is on trial for a criminal offense, it is proper to show conduct subsequent to the alleged criminal offense which may fairly have been influenced by that act. The state has introduced evidence from which you are being asked to infer that [the defendant] fled subsequent to the events of April 16, 1997. Flight can be one type of conduct which would show consciousness of guilt. Whether you draw such an inference from the facts as you find them to be is completely up to you. You should consider all of the evidence in this regard in

*Cox*, 50 Conn. App. 175, 186–87, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999).

## II

The defendant next claims that prosecutorial misconduct during the closing argument denied him due process and violated his right to a fair trial. Specifically, the defendant claims that the prejudicial effect of the prosecutor's improper remarks requires this court to reverse the judgment of conviction and to order a new trial. The defendant raises several claims of prosecutorial misconduct. The defendant properly preserved some of the claims for review because defense counsel objected at trial. One of his claims, however, was not properly preserved, and the defendant now seeks review of that unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3]

We often have stated our standard of review of a claim of prosecutorial misconduct that allegedly results in an unfair trial. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of crimi-

---

deciding whether to draw an inference, such an inference. While you are permitted to draw an inference of consciousness of guilt from such conduct, you are not required to do so. It is up to you to decide what, if any, weight you will give to such evidence in determining whether the defendant has been proven guilty of the crimes charged."

[3] The defendant alternatively argues that his unpreserved claim is entitled to review under the plain error doctrine. Practice Book § 60-5. "[R]eview under the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Stephens*, 249 Conn. 288, 291, 734 A.2d 533 (1999). This claim does not meet that standard.

nal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . .

"In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant. . . . In doing so, we have focused on several factors, [i]ncluded among those factors are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra, 1181; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra, 654; and the strength of the state's case. See *United States* v. *Modica*, supra, 1181; *State* v. *Couture*, supra, 564; see also *State* v. *Glenn*, 194 Conn. 483, 492, 481 A.2d 741 (1984). . . . *State* v. *Alexander*, 50 Conn. App. 242, 255–56, 718 A.2d 66 (1998) [aff'd on prosecutorial misconduct claim, 254 Conn. 290, 755 A.2d 868 (2000)].

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments

complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Citations omitted; internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 355–56, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

Prosecutorial misconduct can occur in the course of closing argument. *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996). Counsel, in addressing the jury, must be allowed a generous latitude in argument, including the zeal of counsel in the heat of argument. *State* v. *Andrews*, 248 Conn. 1, 19, 726 A.2d 104 (1999). Ultimately, the determination of the proper scope of closing argument lies within the sound discretion of the trial court. *State* v. *Copas*, 252 Conn. 318, 337, 746 A.2d 761 (2000). We review the allegedly improper comments in the context of the entire trial. *State* v. *Andrews*, supra, 19.

We first address the prosecutor's comments to which the defendant did not object. This claim was not preserved, and the defendant seeks *Golding*[4] review. The defendant satisfies the first two prongs of *Golding* because an adequate record exists to review his claim and he alleges a constitutional violation.[5] The defen-

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[5] An unpreserved claim that the defendant was denied due process by prosecutorial misconduct can be reviewed on appeal. "It is well settled, however, that a defendant may not prevail under *Golding* or the plain error doctrine unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial, nor

dant, however, cannot satisfy the third prong because he cannot demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

During closing argument the prosecutor stated, "I think what was shown through all the witnesses, especially through [B], is that she was raped on April 16, 1997, in Milford Motel at 1015 Boston Post Road," and, "I think that the state has proven through [B's] testimony once again that this defendant engaged in sexual intercourse, which is sexual actions which impaired her morals, impaired her physical well-being." The defendant claims that with those remarks the prosecutor improperly appealed to the jury's emotions, passions and prejudices. The record discloses that those comments were isolated and that the prosecutor did not engage in a pattern of egregious conduct. The comments do not rise to the level of misconduct; they do not vouch for the truthfulness or veracity of the witness and they do not appeal to the passions, emotions or prejudices of the jurors. The defendant cannot establish the third prong of the *Golding* test that a constitutional violation clearly exists that deprived him of a fair trial. Consequently, the defendant cannot prevail on his unpreserved claim.

We next address the preserved claims. The defendant objected on two occasions, first, when the prosecutor said that B had told the truth and was not lying, and second, to the comment that the defendant and the other men were driving around looking for young girls leaving catechism. In one of the objections, the defendant claimed that the comments were not based on facts in evidence. At trial, the prosecutor stated, "If

will we invoke our supervisory authority to reverse an otherwise lawful criminal conviction absent a showing that the conduct of the prosecutor was so offensive to the judicial process that a new trial is necessary to deter such misconduct in the future." *State* v. *Satchwell*, 244 Conn. 547, 564, 710 A.2d 1348 (1998).

nothing else, what she said on the stand, if, if you can't believe her [B], I don't know who, I mean, the girl got up here and told you the truth," and, "[t]hat's how she fought back. She fought back by . . . coming in here and testifying. . . . She was not lying."

The prosecutor's remarks in this case were not so prejudicial that they deprived the defendant of a fair trial, nor did the comments taint the entire proceedings. "[A] prosecutor may properly comment on the credibility of a witness where . . . the comment reflects reasonable inferences from the evidence adduced at trial." (Internal quotation marks omitted.) *State* v. *Hicks*, 56 Conn. App. 384, 392, 743 A.2d 640 (2000). In this case, in the context of the entire argument, the prosecutor did not express his opinion as to the victim's credibility. Instead, he argued to the jury that in light of the evidence before it of the victim's age, the circumstances of the sexual contact and the testimony of those who had observed the victim that night, the jury could and should believe her. The jury was free to believe her despite the defendant's argument that she was lying to avoid getting into trouble for going to a party with the men. We conclude, therefore, that the prosecutor's argument did not infringe on the defendant's constitutional right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.