## STATE OF CONNECTICUT *v.* CAESAR O'NEIL
### (AC 21590)

Lavery, C. J., and Schaller and O'Connell, Js.

Argued December 3, 2001—officially released January 29, 2002

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Laura G. Holland*, law student intern, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Stephen J. Sedensky III*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Caesar O'Neil, appeals from the judgments of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-

54a (a),[1] attempt to commit murder in violation of General Statutes § 53a-49 (a) (2),[2] assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[3] and criminal attempt to tamper with a witness in violation of General Statutes §§ 53a-49 (a) (2) and 53a-151 (a).[4] On appeal, the defendant claims that the trial court improperly (1) admitted evidence of his flight as consciousness of guilt and (2) instructed the jury on reasonable doubt. We affirm the judgments of the trial court.

The following facts are necessary for our disposition of the defendant's appeal. During the early morning hours of June 25, 1993, two shootings involving the same weapon occurred in Bridgeport within a brief period of time. One of four individuals occupying a car fired a gun from the rear passenger seat, hitting two men, Rafael Rodriguez and Juan Miles. Rodriguez died from the injuries he sustained, and Miles was injured by a bullet that went through his leg. Shortly thereafter, a second shooting occurred. Donald Vernon, while attempting to use a pay telephone, was hit by a bullet that came from the rear passenger seat of a car that was identical to the one involved in the earlier shooting.

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-59 (a) (1) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon . . . ."

[4] General Statutes § 53a-151 provides in relevant part: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to . . . withhold testimony . . . or absent himself from any official proceeding."

The investigation that followed led the police to suspect the defendant as the shooter in both incidents. From 1993 through 1997, the Bridgeport police department, including its fugitive task force, attempted to locate the defendant, without success. On March 14, 1997, the defendant was arrested in connection with the June 25, 1993 shootings. He was charged with murder as a result of the first shooting, and attempt to commit murder and assault in the first degree as a result of the second shooting.

While the defendant was incarcerated and awaiting trial, officials at the Walker Reception Center intercepted a coded letter that he had sent to his mother. The letter, when deciphered, informed the defendant's mother to get a message to one of the defendant's associates. The defendant attempted to establish an alibi for the time of the shooting and to make sure that Vernon did not testify. Subsequently, the defendant was charged with criminal attempt to tamper with a witness. The state filed a motion to consolidate all the charges against the defendant, and he was tried and convicted on each count.[5] Additional facts will be discussed as relevant to the issues on appeal.

I

The defendant first claims that the court improperly admitted evidence of flight that was irrelevant and more prejudicial than probative. We disagree.

---

[5] The defendant was sentenced to a total effective term of seventy-five years in prison. He received fifty years for murder, twenty years each for assault in the first degree and attempt to commit murder, to run concurrently to each other and consecutively to the murder sentence, and five years for criminal attempt to tamper with a witness, to run consecutively to the murder sentence and the concurrent sentences for attempt to commit murder and assault in the first degree. The entire seventy-five year sentence is to run consecutively to a seventy-year sentence he presently is serving for another murder and for attempt to commit murder.

The following additional facts are necessary for our resolution of the defendant's claim. For the three years after suspecting the defendant as the shooter in the June 25, 1993 incidents, the police attempted to apprehend the defendant. In addition to utilizing their fugitive task force, the police went to the defendant's mother's house in an attempt to locate him.

During the trial, the state attempted to introduce the testimony of inspector John Donovan. The state intended to use Donovan's testimony to show the efforts he made while searching for the defendant from 1994 through 1997. Those efforts, the state argued, supported the issue of flight and showed that the defendant was conscious of his guilt. The court did not permit Donovan to testify, holding that at that point in the trial, the proposed testimony's prejudicial effect outweighed its probative value.

Later in the trial, the court permitted the state to call Officer Juan Gonzalez to testify that he was a member of the fugitive task force and that he executed a search warrant at the defendant's mother's house in 1996 in an attempt to apprehend the defendant. It is the defendant's contention that it was improper for the court to permit the introduction of that testimony when there was no evidence introduced at trial to establish that he knew that he was being sought by the police.

## A

"Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State*

v. *Holmes*, 64 Conn. App. 80, 85, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001).

"[R]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 54, 770 A.2d 908 (2001).

"Flight, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." (Internal quotation marks omitted.) *State* v. *Holmes*, supra, 64 Conn. App. 86.

In this case, evidence of the defendant's flight was relevant. "It is relevant to show the conduct of an accused . . . which may be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) Id. It can easily be inferred that the defendant's absence from his home for a period of three years could have been influenced by his criminal acts. Hence, the court did not abuse its discretion in admitting the evidence of the defendant's flight.

## B

The defendant's claim that the evidence should have been excluded because it was more prejudicial than probative is without merit.

"The court must weigh the probative value against any prejudicial effect on the defendant. . . . Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) Id.

The defendant's claim that the evidence should have been excluded because the state failed to establish that he knew the police wanted to speak to him is without merit. We recently rejected a similar argument in *State* v. *Holmes*, supra, 64 Conn. App. 80. In *Holmes*, the defendant claimed that the trial court incorrectly permitted an inference of flight when the state did not offer any evidence to show that he was aware that the police were looking for him. Id., 86–87. In that case, the trial court, relying on *State* v. *Hyslop*, 10 Conn. App. 457, 523 A.2d 1350 (1987), and *State* v. *Nemeth*, 182 Conn. 403, 438 A.2d 120 (1980), permitted the state to introduce the testimony of a police sergeant who testified that on several occasions he left his business card at a location where the defendant was thought to have resided with instructions to call the police department because he was wanted for questioning. *State* v. *Holmes*, supra, 83–84.

In upholding the court's decision, we stated that "*Nemeth* and *Hyslop* articulate the principle that the state is not required, as a matter of law, to establish that the defendant had actual knowledge that he was being charged with a criminal offense before introducing evidence of his flight. . . . The court properly relied on *Nemeth* and *Hyslop* in allowing the state to present evidence of the defendant's flight even if the

state failed to introduce direct or inferential evidence that the defendant knew that he was wanted by the police." (Internal quotation marks omitted.) Id., 87.

On the basis of our review of the transcripts and evidence, we cannot reason that the court abused its discretion in determining that the evidence of flight was more probative than prejudicial, nor can we conclude that an injustice was done.

## II

The defendant's second claim is that the court committed plain error in using the phrase "[n]or is it a doubt suggested by the ingenuity of counsel" in response to a jury question on the definition of reasonable doubt. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. During its initial charge to the jury, the court defined reasonable doubt.[6] While deliberating, the jury asked for "[t]he judge's legal definition of reasonable doubt." In response to the jury's inquiry, the court read a different explanation to the jury, which was agreed on by both parties' counsel.[7] In

---

[6] The court's initial charge to the jury stated: "Reasonable doubt. It's not doubt raised by one questioning simply for the sake of doubt. It's not surmise. It's not guess. It's not speculation or doubt that is not founded upon the evidence or lack of evidence in the case. It's not a hesitation that arises from feelings of sympathy or pity for anybody who's involved in the case. Reasonable doubt is one that is reasonable in light of all the evidence. It's a real doubt. It's an honest doubt, and it's entertained by you only after a thorough examination of all of the evidence that's produced during the trial. An absolute demonstration of guilt is not required to convict. The demonstration need only be beyond a reasonable doubt. The state doesn't have to prove every issue or every fact that comes into issue in the case. It's only the essential elements of the crimes that I will go over with you a little bit later that must be proven beyond a reasonable doubt."

[7] The following colloquy took place between the court and counsel:

"The Court: For that, I'm going to read from our textbook prepared by Borden and Orland, which is different from the explanation initially given. I understand that it's acceptable to both of you gentlemen; is that not correct?

"[Defendant's Counsel]: Yes, Your Honor.

"[Prosecutor]: Yes, Your Honor."

defining reasonable doubt, the court stated that reasonable doubt is not "doubt suggested by the ingenuity of counsel."[8] The defendant claims that the use of that phrase constituted plain error.

The defendant did not raise his claim at trial and now seeks to have us review it under the plain error doctrine.[9] "It is . . . well established that plain error

[8] The complete definition of reasonable doubt given to the jury stated: "I gave you an explanation in my original charge. I'm going to give you a little bit different form of an explanation that is a prepared explanation in a textbook prepared by judges that are far more accomplished than I am. . . . Reasonable doubt has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word reasonable. Reasonable doubt is a doubt for which a valid reason can be assigned. It is a doubt which is something more than a guess or surmise. It is not conjecture or fanciful doubt. A reasonable doubt is not doubt which is raised by someone simply for the sake of raising doubt. *Nor is it a doubt suggested by the ingenuity of counsel* or any of the jurors, which is not justified by the evidence or lack of evidence in the case. Reasonable doubt is a doubt based upon reason and not on the mere possibility of innocence. It is a doubt for which you can in your own mind consciously give a reason. Reasonable doubt, in other words, is a real doubt. It's honest doubt. A doubt which has its foundation in the evidence or lack of evidence. It is the kind of doubt which in the serious affairs which concern you in everyday life you would pay heed and attention to. Of course, absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty on the part of the jury before you can return a verdict of guilty. The state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty. What the law does require, however, is that after hearing all of the evidence, if there is something in that evidence or lack of evidence which leaves in the minds of the jury a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of the doubt and acquitted. If there is no reasonable doubt, then the accused must be found guilty. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt; is consistent with guilt and is inconsistent with any other reasonable conclusion. If you can in reason reconcile all of the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty. That is the explanation which is a textbook explanation given on reasonable doubt." (Emphasis added.)

[9] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . Moreover, because the claim raised here is nonconstitutional, the defendant must demonstrate that the trial court's improper action likely affected the result of his trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 239–40, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002). In this case, the instructions, when read in their entirety, did not result in an unreliable verdict or a miscarriage of justice.

Our Supreme Court has consistently rejected constitutional challenges to the "ingenuity of counsel" instruction. See *State* v. *Delvalle*, 250 Conn. 466, 475, 736 A.2d 125 (1999); *State* v. *Edwards*, 247 Conn. 318, 330, 721 A.2d 519 (1998); *State* v. *Taylor*, 239 Conn. 481, 504, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). In *Delvalle*, our Supreme Court rejected the claim that the use of the "ingenuity of counsel" language constituted plain error, stating that "[w]e see no reasonable possibility that the challenged language, when viewed in the context of the charge as a whole . . . resulted in juror misunderstanding regarding the state's burden of proving the defendant's guilt beyond a reasonable doubt." (Citation omitted.) *State* v. *Delvalle*, supra, 474–75. Our Supreme Court noted, however, that the phrase, when "taken in isolation, conceivably could misdirect the jury's attention . . . ." (Internal quotation marks omitted.) Id., 475. To avoid the possibility of juror confusion, our

Supreme Court has invoked its supervisory authority over the administration of justice to direct our trial courts to refrain from using the "ingenuity of counsel" language in the future. Id., 475–76.

In this case, the court did not use the contested phrase in isolation. The instruction clearly stated that whether reasonable doubt existed or not must be justified by the evidence. The phrase "ingenuity of counsel," when modified by the phrase "or any of the jurors which is not justified by the evidence," indicated to the jury that "doubt may not be created by an argument of counsel or other jurors that is ingenious, but has no basis in the evidence." (Internal quotation marks omitted.) Id., 475, quoting *State* v. *Hines*, 243 Conn. 796, 819 n.18, 709 A.2d 522 (1998).

Although we do not condone the trial court's use of the "ingenuity of counsel" language in its explanation to the jury, which occurred after the *Delvalle* decision was published, the defendant failed to raise that issue at trial. Furthermore, the defendant's attorney specifically agreed to the language that was read to the jury.[10] In light of the defendant's acquiescence at trial and a long line of decisions by our Supreme Court stating that use of the phrase "ingenuity of counsel" does not give rise to constitutional claims, plain error review is not warranted in this case. Although the court should have avoided the language in question, we conclude that the instructions did not affect the fairness or integrity of the proceedings, nor did they result in a manifest injustice to the defendant.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[10] See footnote 7.