RICCARDO I. AMBROGIO *v.* BEAVER ROAD
ASSOCIATES ET AL.
(AC 21448)

Foti, Dranginis and Flynn, Js.

Argued February 13—officially released August 20, 2002

*Richard S. Order*, with whom, on the brief, was *Donald C. Mahoney*, for the appellant (plaintiff).

*Thomas P. Chapman*, with whom, on the brief, were *John L. Hayes* and *Robyn L. Sondak*, for the appellee (defendant Paul DiMascio Construction Company, Inc.).

*Opinion*

DRANGINIS, J. The plaintiff, Riccardo I. Ambrogio, appeals from the summary judgment rendered by the trial court in his favor but awarding him no damages after the court granted the motion in limine filed by the defendant Paul DiMascio Construction Company, Inc.,[1] which precluded the plaintiff from arguing for lost profits and thereby effectively negated his proof of damages in this breach of contract action. Specifically, the plaintiff contends that the court improperly resolved factual issues that were not before it when it decided the motion in limine, thus removing those issues from the jury's consideration. We agree and reverse in part the judgment of the trial court.

The following facts and procedural history are not in dispute. The plaintiff, an oral surgeon, leased office

---

[1] The other defendants, Beaver Road Associates, Rosario S. Mangiafico, Robert H. Tabshey, John Palazzo and Z-Florz, Inc., are not involved in this appeal. We therefore refer to Paul DiMascio Construction Company, Inc., as the defendant.

space at 20-30 Beaver Road in Wethersfield. The lease, which was for a period of ten years with two options to renew for additional terms of five years, stated that the premises were "to be used for a dental/oral and maxillofacial surgery practice in accordance with the normal work program of Riccardo I. Ambrogio and/or associates and for no other purposes."

Shortly after signing the lease, the plaintiff entered into an agreement with the defendant, a general contractor, for the construction of his office. As part of the contract, the defendant agreed to "secure and provide . . . all the materials necessary and perform or cause to be performed all the work necessary for the completion of improvements to the Premises . . . in accordance with the General Specifications" and that "[a]ll work shall be done in a good and workmanlike manner, using experienced labor and first-quality materials as per the specifications."

The defendant thereafter contracted with Z-Florz, Inc., to install the flooring in the plaintiff's two surgical rooms. The floors, Forbo Forshaga AB smaragd sheet vinyl flooring with Forbo's heat welding system, were to be installed in accordance with the manufacturer's instructions to ensure coverage under the manufacturer's five year warranty. Z-Florz, Inc., installed the surgical flooring, and the plaintiff opened his practice on November 16, 1992.

Several months after opening his practice, the plaintiff noticed "moisture seepage, slippery conditions, offensive odors and bubbling in the flooring in the surgical areas of the office." As a result, unsafe and unhealthy conditions caused the plaintiff to close one of the surgical rooms.

The plaintiff subsequently discovered that improper ventilation of the concrete slab under the flooring had caused the seepage problem. Attempts by the plaintiff

to rectify the condition of the surgical room floors were to no avail and the plaintiff brought this action. He claimed that the defendant had breached its contractual duty by failing to properly supervise the installation of the flooring in his office.

After filing this action, the plaintiff notified the defendant that he intended to call two expert witnesses to testify during the trial, Michael C. Matzkin, a dentist, and Conrad A. Kappel, a certified public accountant. Matzkin and Kappel were to testify as to the projected growth of the plaintiff's practice and the profits that were lost as a result of the defective installation of the flooring in the surgical rooms. Prior to the date the trial was to begin, the defendant filed a motion in limine seeking to preclude the plaintiff from introducing any evidence "which [purports] to show that the plaintiff lost patients, lost patient referrals or lost business growth opportunities as elements of his damages." It was the defendant's contention that "[l]ost business and loss of business opportunities are not included in the measure of damages for the breach of a construction contract."

Following a hearing, the court granted the defendant's motion, precluding the plaintiff's witnesses from testifying. The plaintiff filed a motion to reargue, claiming that the court had decided an issue that was not before it, namely, whether lost profits were an appropriate remedy in this specific case. The court denied the motion. The plaintiff then filed a motion for summary judgment as to liability only, which the court granted. This appeal followed.

"A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with

or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding. Practice Book § 42-15. This court has said that [t]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . .

"Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Holmes*, 64 Conn. App. 80, 85, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001).

As we previously stated, the defendant's motion in limine was premised on the basis that lost profits "are not included in the measure of damages for the breach of a construction contract." In its objection to the defendant's motion, the plaintiff focused on the question that the defendant had presented to the court, arguing that lost profits were an appropriate remedy in breach of construction contract cases. In its reply to the plaintiff's objection, the defendant, for the first time, claimed that "if [the trial court was] to accept the plaintiff's argument that *Hadley* v. *Baxendale*, [9 Ex. 341, 354, 156 Eng. Rep. 145 (1854)] applies, [the court] must then consider what damages were reasonably foreseen by the parties when they executed their contract."

During the hearing on the defendant's motion, the plaintiff, without contradiction from the court or from the defendant's counsel, stated that the issue of whether lost profits reasonably were contemplated by both par-

ties at the time they entered into the contract was not before the court, but was a question of fact to be determined by a jury. Further, it was the defendant's position during the hearing that "lost profits in this case or in any construction defect case are not an appropriate measure of damages." The court, however, in its memorandum of decision, stated that the issue before it was "whether lost profits in the form of loss of patients, loss of patient referrals and loss of business growth were reasonably foreseeable as a measure of damages by [the plaintiff] and [the defendant] at the time they entered into their contract."

In granting the defendant's motion, the court held: "Applying the rule in [*Hadley* v. *Baxendale*, supra, 9 Ex. 354] to the present case, the court concludes that [the defendant] could not reasonably have contemplated lost profits as a measure of damages in the event it were to breach the building agreement. Also, lost patients, lost patient referrals and loss of business growth are not losses of the type usually resulting from a general contractor's breach of contract for failure to properly inspect, direct and supervise a subcontractor's installation of flooring. The contract does not state that [the defendant] was aware of special circumstances at the time of contracting, and, therefore, [the defendant] cannot reasonably be supposed to have foreseen liability for lost profits in the event of breach. The widely accepted case of *Hadley* v. *Baxendale* [supra, 9 Ex. 354] supports this court's preclusion of evidence on the ground that [the plaintiff's] alleged loss of patients, loss of patient referrals and loss of business growth was not reasonably foreseeable by [the defendant] at the time of contracting."

The court correctly held that lost profits are a remedy available to a plaintiff in a breach of construction contract case. "The general rule in breach of contract cases is that the award of damages is designed to place the

injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . It has traditionally been held that a party may recover general contract damages for any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself. . . . This court has consistently applied the general damage formula of *Hadley* v. *Baxendale*, [supra, 9 Ex. 354] to the recovery of lost profits for breach of contract, and it is our rule that [u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach." (Internal quotation marks omitted.) *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 32, 662 A.2d 89 (1995). "The usual recovery for breach of a contract is the contract price or *the lost profits* therefrom." (Emphasis added.) *Gazo* v. *Stamford*, 255 Conn. 245, 265, 765 A.2d 505 (2001).

The court, however, improperly applied the principles of *Hadley* v. *Baxendale*, supra, 9 Ex. 341, to determine that lost profits were not a reasonably foreseeable remedy in this particular case. Whether lost profits were available in *this* case was not before the court. The motion in limine sought to have expert witnesses excluded on the theory that lost profits "are not included in the measure of damages for the breach of *a* construction contract." During oral argument before this court, the defendant agreed that the issue before the trial court was "whether lost damages were appropriate in *this kind* of case." (Emphasis added.) The trial court was not asked to decide the question of whether it was reasonably foreseeable that the defendant, *in this case*, contemplated lost profits as a measure of damages in the event the contract was breached.

It appears that the court, in applying the principles of *Hadley* v. *Baxendale,* supra, 9 Ex. 354, interpreted the language of the contract to preclude the awarding of lost profits. In its memorandum of decision, the court stated that " '[i]t is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties. . . . Where there is definite contract language, the determination of what the parties intended by their contractual commitments is a question of law.' " We have noted that "[w]here . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." (Internal quotation marks omitted.) *Wren* v. *MacPherson Interiors, Inc.,* 69 Conn. App. 349, 354, 794 A.2d 1043 (2002). That, however, is not the case here.

Even if the issue of whether damages were foreseeable in this particular case had been properly before the trial court at that stage of the proceedings, the finding that damages could not be awarded would have been improper in light of the fact that the court had only three pages of the seven page contract before it. More importantly, the court did not have a copy of the "outline specifications" that were incorporated into the contract. The contract specifically stated that "[t]he work is to be completed in such a manner as to comply fully with the General Specifications and any changes made thereto." The outline specifications provided the special instructions with which the flooring installation in the surgical rooms needed to comply, namely, that it had to be installed in accordance with the manufacturer's instructions to ensure coverage under the five year warranty. The manufacturer's instructions stated that "[i]t was most important that sub-surfaces be thoroughly DRY and free of moisture prior to installation of Smaragd. Maximum content of moisture 2.5%."[2] The

---

[2] Subsequent testing revealed that the moisture content was between 15 percent and 20 percent.

specifications put the defendant on notice of the special conditions required to install the flooring and that this flooring was atypical.[3] Without having a complete copy of the contract, along with the incorporated specifications, the court was not in a position accurately to construe the terms of the contract. The court decided that the specialized circumstances of the flooring were not in the contemplation of both parties at the time the contract was entered into without having the specific provisions of the contract that related to the flooring's installation.

By going beyond the issue raised in the motion in limine, the court entered into the province of the fact finder. The court decided a question of fact when it held that the defendant "could not reasonably have contemplated lost profits as a measure of damages in the event he were to breach the building agreement." "The determination as to whether future profits were within the contemplation of the parties when contracting necessarily turns on the specific facts established at trial." *Mid-America Tablewares, Inc.* v. *Mogi Trading Co.*, 100 F.3d 1353, 1362 (7th Cir. 1996). Without having the complete contract, the court could not determine that the parties did not contemplate lost profits as a measure of damages in this case. Accordingly, the trial court improperly concluded that lost profits were not allowable.

The judgment is reversed in part and the case is remanded for a hearing in damages.

In this opinion the other judges concurred.

---

[3] The plaintiff claims that the tests required to determine whether the concrete slab was suitable for the specialized flooring were not performed before Z-Florz, Inc., installed the floors.